# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **K.W. (JUNIOR), et al.,** | : | **Case No.  5:21-cv-2423** |
| **Plaintiffs,** | : | **Judge John Adams** |
| vs. | : | **Magistrate Judge Carmen E. Henderson** |
| **CANTON CITY SCHOOL DISTRICT, et al.** | : | **MOTION OF DEFENDANT JOSHUA GRIMSLEY TO DISMISS** |
| **Defendants.** | : | |
| | : | |

Defendant Joshua Grimsley moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' claims against him.  Plaintiffs' Complaint fails to state a claim upon which relief can be granted against Mr. Grimsley, and Mr. Grimsley is therefore entitled to judgment as a matter of law.  This motion is fully supported by the attached memorandum, which is herein incorporated by reference.

Respectfully submitted,

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)\*
Myrl H. Shoemaker, III (0099149)
FREUND, FREEZE & ARNOLD
Capitol Square Office Building
65 E. State Street, Suite 800
Columbus, OH  43215-4247
(614) 827-7300; (614) 827-7303 (fax)
bfreeze@ffalaw.com
mshoemaker@ffalaw.com
*Counsel for Defendant Joshua Grimsley*
\*Trial Attorney

## MEMORANDUM IN SUPPORT

**I. INTRODUCTION & SUMMARY**

The lawsuit arises out of the purported punishment of a high school football player by his coaching staff in a manner that violated his religion. See Complaint ("Doc. #1), generally. Plaintiffs, former District-student K.W. ("Junior") and his parents, K.W. ("Senior") and (L.C."), filed the instant lawsuit against the Canton City School District and the entire coaching staff, including Defendant Joshua Grimsley ("Mr. Grimsley"). The coaches, including Mr. Grimsley, were all sued in both their official and individual capacities.

Plaintiffs, however, have failed to properly plead their claims against Mr. Grimsley pursuant to the First and Fourteenth Amendments, and for intentional infliction of emotional distress. Plaintiffs' claims fail because they fail to identify a single act of Mr. Grimsley that would subject him to liability on any of their claims. Accordingly, Plaintiffs can prove no set of facts entitling them to relief as to their claims against Mr. Grimsley, and Mr. Grimsley is entitled to dismissal of those claims.

**II. STATEMENT OF PLAINTIFF'S ALLEGATIONS**

Junior is an African-American high school senior. Doc. # 1, ¶ 12. Junior is the son of Senior, an African-American male, and L.C., a Caucasian woman. Id., ¶¶ 14–15. Junior previously attended Canton McKinley High School ("McKinley") within the Canton City School District (the "District") and was a member of the McKinley football team. Id., ¶¶ 22–23. Plaintiffs allege that, at the age of 10, Junior and his father converted to the Hebrew-Israelite (Jewish) religious faith, which prohibits the consumption of pork or pork residue. Id., ¶¶ 27–29.

Defendants Marcus Wattley ("Wattley"), Frank McLeod ("McLeod"), Zachary Sweat ("Sweat"), Romeo Harris ("Harris"), Cade Brodie ("Brodie"), Tyler Thatcher ("Thatcher") and

Mr. Grimsley were members of the McKinley football coaching staff. Id., ¶¶ 17–19. **Aside from the case caption, paragraph 19 is the only time Mr. Grimsley is named in the Complaint**. See id. For the remainder of the Complaint, Plaintiffs refer to Wattley, McLeod, Sweat, Harris, Brodie, Thatcher, and Mr. Grimsley collectively as "Defendants' Employees." See id., generally.

The Complaint alleges that Junior failed to attend a weight training class on May 20, 2021 as a result of a slight shoulder injury. Id., ¶ 33. Junior attended the weight session on May 24, 2021, and Plaintiffs allege Junior was "suddenly approached by **Coach Wattley** and **other** Defendants' Employees and was told he would be disciplined for missing the weight program on May 20th." Id., ¶ 34 (emphases added). Plaintiffs do not identify which "other" employees were involved. See id. Plaintiffs then make the following general allegations:

> 36. Junior's teammates (approximately 30 students) were ordered by **Defendants' Employees** to carry 40-pound weights and walk around the perimeter of the gym, surrounding Junior.
>
> 37. **Defendants' Employees** gave Junior a large pork pepperoni pizza and ordered Junior to eat the entire pizza as punishment for failing to appear on May 20th, 2021.
>
> 38. Junior objected and reminded **Defendants' Employees** that he does not eat pork, due to his religious beliefs.
>
> * * *
>
> 42. At this point, **Defendants' Employees** then stated that Junior could remove the pork pepperoni slices; however, the residue was clearly still covering the pizza and Junior continued to object.
>
> 43. **Defendants' Employees** ordered Junior to eat the balance of the pizza or stated that his tenure on the Canton McKinley Football Team would be in jeopardy6 .
>
> 44. Meanwhile, Junior's teammates were forced by **Defendants' Employees** to circle the gym, perform strength exercises with the 40-pound weights and practice running/sprinting drills and were not allowed to stop until Junior finished the entire pizza.
>
> 46. Junior, against his religious beliefs, was forced to eat the pork grease pizza.

>   47. Immediately after, Junior was punished further by **Defendants' Employees** and was forced to run up and down the football field and practice "duck walks".
>
>   * * *
>
>   55. On or about June 3rd, 2021, the Defendants' Employees were terminated from their positions.
>
>   56. Junior became the subject of threats and ridicule from his teammates and the general public.
>
>   57. Junior was forced to enroll in a different school and football program more than 100 miles from the City of Canton due to concerns for his physical safety and mental well-being.
>
>   * * *

Id. (emphases added).

Based on those allegations, Plaintiffs assert the following causes of action: (1) Violation of Junior's First Amendment right to religious freedom; (2) Race-based discrimination against Junior in violation of the First and Fourteenth Amendments; (3) Fourteenth Amendment Equal Protection claim based on Junior's right to bodily integrity; (4) Fourteenth Amendment Due Process and Equal Protection claims based on Senior and L.C. being forced to transfer Junior to another school district; (5) Failure to Train [against the District/Board only]; (6) state law negligence [against the District/Board only]; (7) intentional infliction of emotional distress; and (8) loss of consortium claim for Senior and L.C.

All of Plaintiffs' claims against Mr. Grimsley fail because Plaintiffs have referred to all defendants generally and categorically without identifying a single action attributed directly to Mr. Grimsley. Accordingly, Plaintiffs' Complaint does not pass Rule 12 muster and must be dismissed. Plaintiffs' claims against Grimsley, moreover, also fail on the merits of the allegations.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

### III. LAW & ANALYSIS

#### A. The claims against Mr. Grimsley in his official capacity should be dismissed as redundant.

Plaintiffs have sued Mr. Grimsley in both his official and his individual capacities. See Doc. # 1, generally. Plaintiffs also sued Mr. Grimsley's employer: the Canton City School District Board of Education. Id. Because the suit against Mr. Grimsley in his official capacity is redundant, all such claims should be dismissed.

In Hafer v. Melo, 502 U.S. 21, 25 (1991), the U.S. Supreme Court held that "[o]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (citations and internal quotations omitted). See also, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, n.55 (1978) (same). "[T]he real party in interest in an official-capacity suit is the government entity itself and not the named official." Id. Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit. See Von Herbert v. City of St. Clair Shores, 61 Fed. Appx. 133, 140 (6th Cir. 2003); Doe v. Westerville City School District, 2008 U.S. Dist. LEXIS 43784, Case No. 2:07-cv-0683 (S.D. Ohio 2008); Johnson v. Wash. County Career Ctr., No. 2:10-CV-076, 2010 U.S. Dist. LEXIS 62597, (S.D. Ohio June 22, 2010).

Moreover, Section 1983 claims against a public official in his official capacity are construed as claims against the entity for which he is an agent. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citations omitted)); Claybrook v. Birchwell, 199 F.3d 350, 356 n.4 (6th Cir. 2000) ("An official capacity claim filed against a public

employee is equivalent to a lawsuit directed against the public entity which that agent represents."). Thus, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

As applied to the instant case, Plaintiffs' claims against Mr. Grimsley in his official capacity should be treated as claims against the Board because that entity employed Mr. Grimsley. The Board is the real party in interest, and the naming of Mr. Grimsley in his official capacity is therefore redundant. As such, those official capacity claims should be dismissed.

### B. Plaintiffs' Complaint does not comply with Federal Rule of Civil Procedure 8.

The purpose of a complaint is to provide a defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The Sixth Circuit addressed the issue of the sufficiency of a pleading that refers to all defendants generally and categorically in Marcilis v. Township of Redford, 693 F.3d 589 (6th Cir. 2012). In that case, every allegation of misconduct against the group of "Defendants" was "lumped" together. Id. at 596. The complaint mentioned agents by name only to identify them as government employees. Id. The Court dismissed § 1983 claims against federal agents because **categorical references to "Defendants" without a basis to distinguish allegations against each defendant do not allege sufficient facts to survive dismissal**. Id. at 596–97 (citing Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001)); see also Lanman v. Hinson, 529 F.3d 673, 684 (6th Cir. 2008); Doe v. Cleveland Metro. School Dist. Bd. of Edn., 533 F. Supp. 3d 567, 576 (N.D.Ohio 2021) (granting defendants' motion to dismiss when plaintiffs "lump[ed] all the individual defendants together" with no specific facts as to individual conduct because such allegations "generally fall short of the

fairly low bar Rule 8 sets."); Glasscock v. Village of Mt. Orab, S.D.Ohio No. 1:15-cv-454, 2016 U.S. Dist. LEXIS 182635, at *29 (Dec. 22, 2016) (dismissing an intentional infliction of emotional distress claim where plaintiff's allegations indiscriminately lump together all "Defendants" without differentiation).

The Sixth Circuit is not alone in that opinion; other courts have also held that complaints which indiscriminately pool all defendants together and do not levy allegations against any individual defendant is a "haphazard style of pleading" that is grounds for dismissal. Colson v. City of Alcoa, E.D.Tenn. No. 3:16-CV-377, 2017 U.S. Dist. LEXIS 66339, at *11 (May 2, 2017). For example, the Tenth Circuit has explained that "it is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity that the complaint make clear exactly who is alleged to have done what to whom as distinguished from collective allegations." Brown v. Montoya, 662 F.3d 1152, 1165 (10th Cir. 2011); see also, Bowling v. Willis, No. 4:18-CV-610-ALMCAN, 2019 U.S. Dist. LEXIS 106180, at *26 (E.D. Tex. Apr. 2, 2019) (citation omitted), report and recommendation adopted sub nom ("[a] complaint does not satisfy the requirements of Iqbal and Twombly by lumping together all defendants, while providing no factual basis to distinguish their conduct."); Springs v. Sec'y Diaz, No. 21CV862-MMA (AGS), 2021 U.S. Dist. LEXIS 101673, 2021 WL 2184851, at *6 (S.D. Cal. May 28, 2021) (dismissing the pro se plaintiff's § 1983 claims because the complaint "fails to contain individualized allegations against these Defendants regarding their involvement"); *cf*. Dodson v. Cnty. Comm'rs of Mayes Cnty., No. 18-CV-221-TCK-FHM, 2019 U.S. Dist. LEXIS 77706, at *14 (N.D. Okla. May 8, 2019) (dismissing the complaint "for failure to adequately allege a claim for supervisory liability" because the complaint lumped the defendants "together without

identifying the specific actions each defendant took or failed to take during the incident giving rise to the action").

*Here*, Plaintiffs' Complaint suffers from the same insufficiency as those cases cited above. The only time that the body of the Complaint mentions Mr. Grimsley, by name, is in paragraph 19 where Plaintiffs identify him as one of "Defendants' Employees." Doc. # 1, ¶ 19. Without identifying *any* actions taken by Mr. Grimsley, Plaintiffs have not satisfied the requirements of Rule 8 and have not put Mr. Grimsley on sufficient notice of the basis of any of the claims against him individually. Accordingly, all Plaintiffs' claims against Mr. Grimsley should be dismissed for this reason alone.

### C. Plaintiffs fail to state claims under 42 U.S.C. § 1983.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the Federal Constitution or laws of the United States, and (2) the deprivation was caused by a person while acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 155–57 (1978); Wershe v. Combs, 763 F.3d 500, 505 (6th Cir. 2014) (citing Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005)).

"Persons sued in their individual capacities under § 1983 can be held liable based only on **their own unconstitutional behavior**." Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012); Hall v. Trump, No. 3:19-cv-00628, 2020 U.S. Dist. LEXIS 38349, at *13 (M.D. Tenn. Mar. 5, 2020); see also Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Stated differently, "a plaintiff bringing a section 1983 action must *specify* the personal involvement of *each* defendant." Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992) (emphasis added).

*Here*, as discussed above, Plaintiffs have not alleged any conduct attributable to Mr.

Grimsley, let alone alleged conduct with the specificity required to support a claim for individual liability pursuant to Section 1983. Therefore, this claim must be dismissed.

> **D.** **Plaintiffs second cause of action, alleging racial discrimination, is not viable on its face.**

Plaintiffs allege in their Complaint that "some of the Defendants believe Plaintiffs' Jewish/Hebrew-Israelite beliefs are based on race, not based on religion." Doc. # 1., ¶ 66. They contend the "antisemitic actions of the Defendants is a violation of the First and Fourteenth Amendments to the U.S. Constitution based on race-based harassment in violation of 42 U.S.C. § 1983." Id., ¶ 68.

Initially, it is important to note that there is no basis for a First Amendment claim based on race. The First Amendment is patently applicable to speech, religion, and association.

It is not well-settled as to whether Jewish ethnicity constitutes a "race" for purposes of § 1983 claim, but even those courts holding that such a designation is appropriate have not extended that designation to those who are *not* of Jewish ancestry, but practice Judaism. Indeed, many courts have found that Jewish *ethnicity* may qualify alternatively as a race or national identity under 42 U.S.C. § 1981, § 1982, and Title VI, but *not* Title VII. See Bonadona v. Louisiana Coll., 2019 U.S. Dist. LEXIS 149401, at *2 (W.D. La. Aug. 28, 2019); T.E. v. Pine Bush Cent. Sch. Dist., 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014; Lapine v. Edward Marshall Boehm, Inc., 1990 U.S. Dist. LEXIS 3459, 1990 WL 43572, at *5 (N.D. Ill. Mar. 28, 1990); but see Martinez-Nolan v. Tyson Poultry, W.D.Ark. No. 5:20-CV-5082, 2021 U.S. Dist. LEXIS 24092, at *29 (Feb. 9, 2021) ("the Court declines to hold that Jewish people are a race as that term is defined under Title VII"). The analysis in those cases focused on Jewish ethnicity, as in an ancestral origination in Israel.

*Here*, the Complaint states that Junior is the son of an African American father and a

Caucasian woman, and that Junior and his father *converted* to the Jewish faith when Junior was 10 years old. The Complaint does not reference either Senior or L.C. as being ethnically Jewish. Therefore, Plaintiffs' second claim for relief, alleging racial discrimination, must be dismissed in its entirety for these reasons as well as Plaintiffs' failure to allege individual conduct.

### E. Junior has not adequately plead his third cause of action for due process violations under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a denial of equal protection under the traditional theory, the plaintiff must allege that, based on **membership in a protected class**, he received treatment different from others with whom he is similarly situated and that such difference in treatment was the result of intentional discrimination. See Hassan v. City of N.Y., 804 F.3d 277, 294–98 (3d Cir. 2015).

Of course, to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory *intent or purpose* is required. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–65 (1977). Discriminatory purpose means that the defendant(s) "selected or reaffirmed a particular course of action at least in part **'because of**,' not merely 'in spite of,'" the plaintiff's race or religion. Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) (emphasis added).

"School officials violate the Equal Protection Clause when they punish a student more severely for his conduct than other students **because of** the student's [protected class]." Heyne v. Metro. Nashville Pub. Schools, 655 F.3d 556, 570 (6th Cir.2011) (emphasis added) (citing Buchanan v. City of Bolivar, 99 F.3d 1352, 1360 (6th Cir.1996) (stating in context of an Equal Protection claim alleging difference in discipline based on race that "[t]he Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar manner.'"); Billings

v. Madison Metro. Sch. Dist., 259 F.3d 807, 812-15 (7th Cir. 2001) (discussing the suspect nature of racial classifications in the school context); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (stating in the context of plaintiff's § 1983 claim of disparate punishment on the basis of gender that "[t]o succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional.").

*Here*, the allegations in Plaintiffs' Complaint are actually adverse to Junior's Equal Protection claim.  Paragraph 48 specifically states Defendants' Employees "had **previously and routinely** punished their football players by requiring them to eat miscellaneous products for breaking rules and regulations of the football team." Doc. # 1, ¶ 48.  Yet, Plaintiffs do not allege that *pepperoni* pizza was specifically selected *because* Junior was Jewish.  Accordingly, these allegations are insufficient to state a claim, providing further grounds for dismissal of this claim against Mr. Grimsley.

      **F.**     **Senior and L.C.'s Fourteenth Amendment claims are not viable.**

The Fourteenth Amendment's Due Process Clause forbids States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Fourteenth Amendment's Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty."  Washington v. Glucksberg, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted).  The U.S. Supreme Court has held that one such fundamental liberty interest protected by the Due Process Clause is "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000); see also Fields, 427 F.3d at 1204.  Among other things, this right means that "the state cannot prevent parents from choosing a specific educational

program * * * ." Id. at 1205.

*Here*, Plaintiffs' allegations arise from the District's termination of the football coaching staff involved in the incident, which Plaintiffs allege outraged the school community; that public reaction purportedly "forced" him to transfer to another school. Doc. # 1, ¶ 56. Those allegations do not constitute a valid Fourteenth Amendment claim for Junior's parents, however. Instead, the Complaint indicates that the parents specifically *exercised* their rights to make decisions concerning the care, custody, and control of Junior—by transferring him to a different school. The conclusory allegation concerning a "forced" transfer is insufficient to overcome the reality that his parents made that transfer decision. Therefore, Senior and L.C. have failed to state a claim in this regard, (in addition to their failure to allege any conduct attributable to Mr. Grimsley) and such claim must be dismissed for these reasons as well.

### G. Junior's intentional infliction of emotional distress claim is conclusory.

"In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove '(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.'" Meminger v. Ohio State Univ., 10th Dist. No. 17AP-489, 2017-Ohio-9290, ¶ 14, 102 N.E.3d 642, quoting Phung v. Waste Mgt., 71 Ohio St.3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286 (1994). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Yeager v. Local Union 20, Teamsters, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). A claim requires the alleging of distress both severe and debilitating, of a nature that no reasonable man could be expected to endure. Paugh v. Hanks, 6 Ohio St.3d 72, 78, 6 Ohio B. 114, 451 N.E.2d 759 (1983); and Coffman v. Dept. of Rehab. & Corr., 10th Dist.

No. 12AP-816, 2013-Ohio-3829, ¶ 12.

*Here*, Plaintiffs' Complaint alleges the above elements in a conclusory manner and without factual support. Moreover, Plaintiffs abandoned the group-style pleading in asserting this claim, and do not identify even "Defendants' Employees." Instead, Plaintiffs simply allege: "Junior was emotionally distraught as a result of the intentional actions alleged in this complaint and has been placed under medical supervision and counselling." Doc. # 1, ¶ 91. Because the claims for relief rely on the insufficient factual allegations preceding (in that Plaintiffs' Complaint is completely devoid of any specific allegations as to Mr. Grimsley's individual conduct), it too must fail.

### H. Senior and L.C.'s loss of consortium claim is derivative and must fail.

Ohio law recognizes the common-law action for parental loss of consortium of a minor child. Gallimore v. Children's Hosp. Med. Ctr., 67 Ohio St. 3d 244, 1993-Ohio-205, 617 N.E.2d 1052, 1060 (Ohio 1993). The basis of such a claim is that the third-party tortfeasor negligently or intentionally caused physical injury to the child. See id. Therefore, the parent is compensated for a harm done or for losses suffered because of injury to the child and the parent-child relationship. See Rolf v. Tri State Motor Transit Co., 91 Ohio St. 3d 380, 2001-Ohio-44, 745 N.E.2d 424, 426 (2001).

A parental claim for loss of consortium is derivative of the child's cause of action. Messmore v. Monarch Mach. Tool Co., 11 Ohio App. 3d 67, 463 N.E.2d 108, 110 (Ohio App. 9 Dist. 1983). Accordingly, with all of Junior's claims against Mr. Grimsley individually subject to dismissal, the derivative consortium claims can also not survive.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs have categorically failed to allege a viable claim against Mr. Grimsley. Plaintiffs' Complaint is devoid of any facts regarding Mr. Grimsley's

conduct, and is therefore subject to dismissal in its entirety.

> Respectfully submitted,
>
> */s/ Bartholomew T. Freeze*
> Bartholomew T. Freeze (0086980)*
> Myrl H. Shoemaker, III (0099149)
> FREUND, FREEZE & ARNOLD
> Capitol Square Office Building
> 65 E. State Street, Suite 800
> Columbus, OH 43215-4247
> (614) 827-7300; (614) 827-7303 (fax)
> bfreeze@ffalaw.com
> mshoemaker@ffalaw.com
> *Counsel for Defendant Joshua Grimsley*
> *Trial Attorney

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was served this 25th day of January, 2022, via electronic mail and/or regular U.S. mail, upon the following:

Edward L. Gilbert
Edward L. Gilbert Co., LPA
One Cascade Plaza, Suite 825
Akron, OH 44308
330-376-8855; 330-376-8857 (fax)
egilbert@edwardlgilbert.com
*Attorney for Plaintiffs*

Markus E. Apelis
Gallagher Sharp LLP
1215 Superior Ave., 7th Floor
Cleveland, OH 44114
mapelis@gallaghersharp.com
*Counsel for Marcus Wattley, Frank McLeod, Zachary Sweat, Romero Harris, Cade Brodie, and Tyler Thatcher*

Kathryn Perrico
Sara Ravas Cooper
Miriam Fair
Walter Haverfield
The Tower at Erieview
1301 East Ninth Street, Ste. 3500
Cleveland, OH 44114-1821
kperrico@walterhav.com
scooper@walterhav.com
mfair@walterhav.com
*Attorneys for Defendants, Canton City School District, Canton City School District Board of Education and Jeffery Talbert*

> */s/ Bartholomew T. Freeze*
> Bartholomew T. Freeze (0086980)

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**