**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT AKRON**

| | | |
|---|---|---|
| **K.W. (JUNIOR), ET AL.** | : | **CASE NO. 5:21-CV-2423** |
| | : | |
| **PLAINTIFFS** | : | **JUDGE JOHN ADAMS** |
| | : | |
| **VS.** | : | **MAGISTRATE JUDGE** |
| | : | **CARMEN E. HENDERSON** |
| **CANTON CITY SCHOOL DISTRICT,** | : | |
| **ET AL.** | : | |
| | : | |
| **DEFENDANTS** | : | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS
FILED BY DEFENDANT JOSHUA GRIMSLEY**

---

Now come Plaintiffs, by and through the undersigned counsel, and offer the following

Memorandum in Opposition to the Motion to Dismiss filed by Defendant Joshua Grimsley.

Because Plaintiffs' causes of action are sufficiently pleaded in their Complaint to satisfy the

requirements of the Federal Rules of Civil Procedure, Defendant's motion is without merit, and

the motion should be denied.

## I.      Standard of Review.

Defendant's motion does not identify a Rule under which it is being made, but given the

fact that Mr. Grimsley has not yet filed an Answer in this case, the motion is presumably being

made pursuant to Fed.R.Civ.P. 12(b)(6).  "[T]he pleading standard Rule 8 announces does not

require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949,

173 L. Ed. 2d 868 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955,

1964, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain

1

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*.

In demanding that the Complaint assert particular actions by particular Defendants,

Grimsley is attempting to hold Plaintiffs to a probability standard, not a plausibility standard, as

required by the Courts. "The plausibility standard is not akin to a "probability requirement," but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**II.     Claims against a state actor in his official capacity are not redundant.**

Grimsley first argues that claims against him in his official capacity are "redundant"

because, he argues, "official-capacity suits 'generally represent only another way of pleading an

action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.

Ct. 358, 361, 116 L. Ed. 2d 301 (1991); quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.

Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985). However, this distinction is important.

> On the merits, to establish personal liability in a § 1983 action, it is enough to show
> that the official, acting under color of state law, caused the deprivation of a federal
> right. See, e.g., *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
> More is required in an official-capacity action, however, for a governmental entity
> is liable under § 1983 only when the entity itself is a " 'moving force' " behind the
> deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70
> L.Ed.2d 509 (1981) (quoting *Monell*, supra, 436 U.S., at 694, 98 S.Ct., at 2037);
> thus, in an official-capacity suit the entity's "policy or custom" must have played a
> part in the violation of federal law.

*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).

In this case, Plaintiffs have asserted claims against the School District under *Monell*;

against the individual Defendants personally; and against the individual Defendants in their official

capacity. Both the *Monell* claims and the official capacity claims require Plaintiffs to demonstrate

that a policy of the school district led to Plaintiffs' injuries.  However, as the Sixth Circuit noted

in *Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621, 635–36 (6th Cir. 2012), this is an issue

that is properly addressed at the summary judgment stage, once a plaintiff has had an opportunity

to investigate whether such a policy exists.  Thus, since no discovery has yet been done in this

case, Defendant's arguments on this issue are premature, and Defendant's motion should be

denied.

### III.    Plaintiffs sufficiently pleaded claims against the individual Defendants.

Grimsley argues that the claims against him in his individual capacity should be dismissed

because, he claims, the Complaint contains no specific allegations of action on his part.  Grimsley

is attempting to "raise the bar" on what is necessary to plead a cause of action against a group of

people who acted together to commit a tort.

A similar issue was addressed by Judge Thomas Rose of the Southern District of Ohio:

> Count One, Branch Five asserts a claim for unconstitutional failure to intervene to protect Plaintiff Lucas. In order to establish liability for failing to intervene in the use of excessive force, it must be shown that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Turner v. Scott, 119 F.3d 425, 429 (6th Cir.1997). Plaintiffs allege that Defendant McKinney gave an order to throw Plaintiff Lucas to the ground. Defendants request that this claim be dismissed for failure to specify which defendants failed to intervene. Plaintiffs' proposed amended complaint refers to "all Defendants present." In the context of this case, this is sufficiently precise. Discovery will reveal which defendants were present. This portion of Defendants' motion will be denied.

*Burgess v. Fischer*, 766 F. Supp. 2d 845, 851 (S.D. Ohio 2010).  Judge Rose was addressing a

situation in which an arrestee was beaten during the booking process for making a rude comment

to a Sheriff's Deputy, and several deputies, corrections officers, and other employees of the

Sheriff's Office stood around and watched it happen.  The allegations in Plaintiffs' Complaint are

similar:

3

19.  Defendants Marcus Wattley ("Wattley"), Frank McLeod ("McLeod"), Zachary Sweat ("Sweat"), Romeo Harris ("Harris"), Cade Brodie ("Brodie"), Tyler Thatcher ("Thatcher") and Josh Grimsley ("Grimsley"), together referred to as "Defendants' Employees", are all public decision-maker employees hired by the District/Board to teach, administer and implement policies, approved by the District/Board, in the Canton McKinley High School Football Program.

\*\*\*

24. Defendants' Employees, led by Head Coach Wattley, established a mandatory off-season weight program that all perspective players were required to attend.

\*\*\*

33. On Thursday, May 20th, 2021, as a result of a slight shoulder injury sustained while lifting weights, Junior decided not to appear for the mandatory weight class.

34. On Monday, May 24th, 2021, Junior appeared for the mandatory weight class and was suddenly approached by Coach Wattley and other Defendants' Employees and was told that he would be disciplined for missing the weight program on May 20th.

35. Junior was ordered to go to the gym and sit in the lone chair that was placed in the middle of the gymnasium floor.

36. Junior's teammates (approximately 30 students) were ordered by Defendants' Employees to carry 40-pound weights and walk around the perimeter of the gym, surrounding Junior.

37. Defendants' Employees gave Junior a large pork pepperoni pizza and ordered Junior to eat the entire pizza as punishment for failing to appear on May 20th, 2021.

38. Junior objected and reminded Defendants' Employees that he does not eat pork, due to his religious beliefs.

39. In fact, Junior kicked the pizza box away from him, refusing to touch the pork pepperoni pizza (this incident was caught by security footage).

40. Defendants' Employees retrieved the pizza box and again ordered Junior to eat the pork pepperoni pizza, in violation of his religion.

41. Junior stated a minimum of ten times that he did not eat pork or pork residue.

42. At this point, Defendants' Employees then stated that Junior could remove the pork pepperoni slices; however, the residue was clearly still covering the pizza and Junior continued to object.

4

43. Defendants' Employees ordered Junior to eat the balance of the pizza or stated that his tenure on the Canton McKinley Football Team would be in jeopardy.

44. Meanwhile, Junior's teammates were forced by Defendants' Employees to circle the gym, perform strength exercises with the 40-pound weights and practice running/sprinting drills and were not allowed to stop until Junior finished the entire pizza.

45. Junior was subject to threats from his teammates if he did not eat the pizza quickly (again, these facts can be verified by security footage).

46. Junior, against his religious beliefs, was forced to eat the pork grease pizza.

47. Immediately after, Junior was punished further by Defendants' Employees and was forced to run up and down the football field and practice "duck walks".

48. According to Defendants' Employees' own statements, they had previously and routinely punished their football players by requiring them to eat miscellaneous products for breaking rules and regulations of the football team.

(Complaint, Doc. 6, PageID# 4-7)  Just like in Burgess, Plaintiff's Complaint refers to a specific group of Defendants, who are identified by name in an earlier paragraph, who acted together to complete a tort.  As Judge Rose said, "[d]iscovery will reveal which defendants were present." The allegations above are sufficient to identify those persons who are alleged to have participated in 1. Forcing Junior to eat the pizza, 2. Forcing the other members of the team to perform exercise drills until Junior finished eating the pizza, and 3. Threatening Junior that he would be kicked off the football team if he didn't eat the pizza.  This is sufficient to meet the "plausibility" test set out by the U.S. Supreme Court in *Iqbal* and *Twombley*.

Grimsley's reliance on *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) is misplaced.  That case involved a "Bivens" action, not a "1983" action, which the Sixth Circuit was careful to point out.  The Complaint referred to "Defendants" in general, and failed to assert that the two Federal agents did anything in particular.  *Id*, 693 F.3d at 596-597.  It was on this basis that the Sixth Circuit affirmed the dismissal of the claims against the federal agents.

5

In this case, the Complaint identifies Grimsley as one of the people referred to as "Defendants' Employees" (⁋ 19).  It then accuses "Defendants' Employees" of forcing Junior to eat the contaminated pizza, forcing the other members of the team to perform drills while Junior ate the pizza, and threatening Junior with being removed from the team.  (⁋ 36-37, 43) Thus Grimsley is identified as one of the group of individuals who performed these tortious acts.  This is sufficient to inform Grimsley as to the nature of the claims against him.  For this reason, Grimsley's motion to dismiss should be denied.

Grimsley's reliance upon *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) is similarly misplaced.  That decision dealt with a motion for summary judgment, where the Court of Appeals held that the district court had failed to consider the factual allegations against each defendant separately.  No discovery has yet been done in this case, thus summary judgment, and the holding in *Lanman,* is inappropriate at this stage of the case.  For this reason, Defendant's motion to dismiss should be denied.

Lastly, Grimsley's reference to *Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Educ.*, 533 F. Supp. 3d 567, 576 (N.D. Ohio 2021), is inappropriate.  The portion of the decision referred to dismissed a claim under Ohio law that the plaintiff purported fell under an exception to statutory immunity for acts or omissions done "with malicious purpose, in bad faith, or in a wanton or reckless manner."  *Id*.  Statutory immunity is not an issue in this case, as Ohio's statutes do not limit liability under Federal law, and statutory immunity does not apply to any of the claims Plaintiffs made under Ohio law.  The *Doe* court noted that the plaintiff's general allegations of duties owed failed to state with specificity what the individual defendants had done to incur liability.  That is not the case here, as the above discussion makes it clear exactly what Grimsley

6

is accused of doing.  Thus, this argument is without merit, and the motion to dismiss should be denied.

## IV.    Plaintiffs pleaded their § 1983 claims with sufficient specificity.

For this argument, Grimsley reasserts his argument about several defendants accused of engaging in the same collective conduct, which was refuted above.  In addition, Grimsley adds the claim that there is a requirement that § 1983 claims must be pleaded with specificity.  (Motion to Dismiss, Doc. 6, Page ID# 35) This is not the law.  *Jones v. Bock*, 549 U.S. 199, 212–13, 127 S. Ct. 910, 919, 166 L. Ed. 2d 798 (2007) (noting that no heightened pleading requirement exists for § 1983 cases.); citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

In making this unsupportable proposition, Grimsley cites to a thirty-year-old case from the Fifth Circuit, *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992).  Not only has this case never been cited by the Sixth Circuit, it actually holds the opposite of what Grimsley claims.  In reversing the district court's dismissal of the case, the Circuit Court held: "Whether or not Murphy can adequately identify the prison officers who allegedly assaulted him can only be determined conclusively if Murphy is given the opportunity to conduct discovery. Accordingly, we REVERSE AND REMAND." *Id.*  Thus, the case stands for the proposition that a plaintiff should be permitted to perform discovery in order to identify which defendant performed which tortious act.  Thus, Grimsley's argument based on this citation is without merit, and the motion to dismiss should be denied.

## V.    Plaintiff's claim for racial discrimination is cognizable under the law.

Grimsley's argument in this section of his motion appears to be that while Junior, and his father, are practicing Jews, they are not ethnically Jewish.  Grimsley appears to be arguing that it

is not possible for a person to have both African-American heritage and Jewish heritage.  He is also arguing that the determining factor in whether a Jewish person is a victim of religious discrimination or racial discrimination is their ethnicity.  The Sixth Circuit, quoting from a U.S. Supreme Court decision, has held that engaging in domestic terrorism in order to keep Jewish persons from worshipping at a synagogue qualifies as racial discrimination, and in so doing rejected the distinction claimed by Grimsley.  The Sixth Circuit, in determining the applicability of 42 U.S.C. § 1982 to the aforesaid incident of domestic terrorism, held as follows:

> Although specifically aimed at "racial" discrimination, "definitions of race when § 1982 was passed were not the same as they are today." *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987) (citing *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987)). Section 1982 "was 'intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.' " *Id*. (quoting *Saint Francis*, 481 U.S. at 613, 107 S.Ct. at 2028). The question before the court was "not whether Jews are considered to be a separate race by today's standards, but whether, at the time § 1982 was adopted, Jews constituted a group of people that Congress intended to protect." *Id*. The court answered this question in the affirmative and found "that Jews ... were among the peoples then considered to be distinct races and hence within the protection of the statute." *Id*. at 617–18, 107 S.Ct. at 2022; see also *Jews for Jesus v. Jewish Comm. Rel. Council of N.Y.*, 968 F.2d 286, 291 (2d Cir.1992) (discussing *Shaare Tefila* and *Saint Francis* ); *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1261 (7th Cir.1990) (noting that "historically the term ['race'] was used much more broadly, to denote groups having common ancestry or even a common culture," and in this "traditional loose sense," "Jews are members of a distinct race."); cf. *Bisciglia v. Kenosha Unified School Dist. No. 1*, 45 F.3d 223, 229–30 (7th Cir.1995) (holding that "Italians" may be considered an identifiable "race" for purposes of a claim of racial discrimination under Section 1981).

*United States v. Brown*, 49 F.3d 1162, 1166 (6th Cir. 1995).  Thus, in the Sixth Circuit at least, there is no distinction between people who are religiously Jewish and people who are ethnically Jewish for purposes of racial discrimination under Federal law.  It is worth noting that the four cases Grimsley cites in support of his more restrictive reading of the law are from Louisiana, New

York, Illinois, and Arkansas. None of these cases can overrule the mandatory authority of the Sixth Circuit's decision in *U.S. v. Brown*.

Grimsley's motion next dives into whether Junior qualifies as ethnically Jewish. While this issue is, as discussed above, moot, Plaintiffs will discuss it out of an abundance of caution. The motion notes that Junior and Senior are African American, and that both converted to the Jewish "common culture" of diet, i.e., Hebrew Israelite, when Junior was ten years old. It also notes that L.C., Junior's mother, is Caucasian. Beyond that, neither the Complaint nor the motion attempts to assign any ethnic background to L.C. The reason that this is not pleaded in the Complaint is because it is, as discussed above, moot.

For the reasons discussed above, the Sixth Circuit does not distinguish between people who are ethnically Jewish and people who are religiously Jewish (based on "common culture") for purposes of Federal anti-discrimination laws. For this reason, Grimsley's motion to dismiss should be denied on this basis.

### VI. Plaintiff adequately pleaded his due process claim.

The motion next argues that Plaintiffs failed to adequately plead their claims for violations of due process under the Fourteenth Amendment. Defendant claims that the Complaint fails to make it clear that there was a discriminatory animus behind the Defendants' actions. This is untrue.

The Complaint makes it very clear that each of the Defendants, as well as all of Junior's teammates and most of his classmates, were aware of Junior's religious affiliation.

> 30. During the period of time that he was a member of the Canton McKinley Football Team, Junior made it known, for team luncheons and dinners, that he could not eat pork and other arrangements would be made for non-pork options.

> 31. Plaintiffs further filed several forms with the District/Board noting Junior "does not eat pork".

32. Defendants' Employees were fully aware of Junior's religious dietary restrictions (non-consumption of pork).

\*\*\*

38. Junior objected and reminded Defendants' Employees that he does not eat pork, due to his religious beliefs.

39. In fact, Junior kicked the pizza box away from him, refusing to touch the pork pepperoni pizza (this incident was caught by security footage).

40. Defendants' Employees retrieved the pizza box and again ordered Junior to eat the pork pepperoni pizza, in violation of his religion.

41. Junior stated a minimum of ten times that he did not eat pork or pork residue.

(Complaint, Doc. 1, PageID# 6-7) It is clear from the allegations in the Complaint that Defendants knew that Junior was forbidden from eating the pizza.  Nonetheless they forced him, under threat of retaliation from his teammates, and under threat of removal from the football team, to violate his religious beliefs.  Discriminatory animus is the clear inference to be drawn from these allegations.

The cases Grimsley cites actually agree on this point.  In *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 571 (6th Cir. 2011), the Circuit Court found that the plaintiff's allegations were sufficient to "state a plausible claim against Manuel for violation of his right to equal protection."  In *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (6th Cir. 1996), the Circuit Court affirmed a grant of summary judgment because the plaintiff had failed to produce ***evidence*** "demonstrating that the defendants treated similarly situated individuals in a disparate manner."  In *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 812 (7th Cir. 2001), the Seventh Circuit affirmed a grant of summary judgment to the defendants because "there was no evidence that B.B. was placed in Ms. Zabel's class because of her race."  In *Reese v. Jefferson Sch. Dist. No. 14J*, 208

10

F.3d 736, 740 (9th Cir. 2000), the Ninth Circuit upheld a grant of summary judgment because there was "no direct evidence of gender animus."

*Heyne* is the only case cited by Grimsley that deals with a motion to dismiss, and it found that the allegations were sufficient to state a claim. The other cases all deal with motions for summary judgment, which depend on evidence, not allegations. The allegations in the Complaint are sufficient to support an inference of racial animus. For that reason, the motion to dismiss is without merit, and should be denied.

**VII.    Senior and L.C.'s Fourteenth Amendment claims.**

Grimsley's motion to dismiss admits that parents have a fundamental liberty interest in deciding where their children go to school. (Motion to Dismiss, Doc. 6, Page ID# 38) In this case, the District interfered with Senior's and L.C.'s decision to have Junior attend Canton McKinley High School by terminating the individual Defendants, which exposed Junior to "threats and ridicule from his teammates and the general public." (Complaint, Doc.1, Page ID# 8) This forced Plaintiffs to enroll their son "in a different school and football program more than 100 miles from the City of Canton due to concerns for his physical safety and mental well-being." (Complaint, Doc.1, Page ID# 8) This caused great financial hardship and separated the family. (Complaint, Doc.1, Page ID# 10)

Grimsley claims that the use of the word "forced" to describe the necessity of enrolling Junior in a different school is "conclusory", and would apparently like to blame Plaintiffs for the decision to remove their son from an atmosphere of threats and ridicule. (Motion to Dismiss, Doc. 6, PageID# 39) Grimsley claims, without any legal authority in support, that this makes the claim somehow invalid. This assertion is without logical or legal support, and for this reason the motion to dismiss should be denied.

**VIII.   Junior's claim for intentional infliction of emotional distress is properly pleaded.**

The motion to dismiss properly identifies the elements of a claim for intentional infliction of emotional distress under Ohio law.  (Motion to Dismiss, Doc. 6, PageID# 39) The motion then attempts to downplay the seriousness of the Defendants' actions, by claiming that exposing a teenager to ridicule and threats from his friends and teammates, while forcing him to violate a deeply held religious belief, is not sufficiently serious to justify the imposition of damages.

In fact, the Complaint specifically addresses the seriousness of Junior's emotional distress:

91. Plaintiff Junior was emotionally distraught as a result of the intentional actions alleged in this complaint and has been placed under medical supervision and counselling.

92. Plaintiff Junior will continue to need medical counseling in the future.

(Complaint, Doc.1, PageID# 12)

Caselaw in Ohio holds that conduct that is sufficiently serious that the plaintiff requires medical intervention as a result is sufficiently serious to justify imposition of damages.  As an example, in *Meyers v. Hot Bagels Factory, Inc*., 131 Ohio App. 3d 82, 89, 721 N.E.2d 1068, 1072–73 (1999), the Ohio First District Court of Appeals held that a series of sexual remarks by a shop owner to a customer justified imposition of damages.  Verbal and sexual harassment of a client by an attorney can also be sufficiently serious to support a claim for intentional infliction of emotional distress.  *Buckman-Peirson v. Brannon*, 2004-Ohio-6074, ¶ 38, 159 Ohio App. 3d 12, 21, 822 N.E.2d 830, 837 (2d Dist.).  Given the fragile nature of a teenager's emotional well-being, it is certainly plausible that religious discrimination and harassment from authority figures, combined with threats and harassment from peers, could have a serious negative effect on Junior's mental health.  This was not an incident of common teasing, or even bullying.  This was a premeditated, calculated effort by Defendants to embarrass and traumatize Junior.  It worked.  Junior has been

12

under a doctor's care because of the emotional trauma.  This is sufficient to plead a cause of action for intentional infliction of emotional distress under Ohio law.

**IX.     Senior's and L.C.'s consortium claims survive.**

Lastly, Grimsley points out that the loss of consortium claims pleaded by Junior's parents are derivative of other claims, and cannot stand by themselves.  (Motion to Dismiss, Doc. 6, PageID# 40) While this is a true statement, the conclusion Grimsley reaches is false.  As discussed above, all of Plaintiffs' claims should survive this motion.  Thus, the loss of consortium claims has other claims upon which they can be predicated, and the motion should fail.

Grimsley also misstates the purpose of parental consortium claims in Ohio.  Under Ohio law, consortium includes "a loss of society, companionship, comfort, love, and solace between parent and child." *Brady v. Miller*, 2d Dist. Montgomery No. 19723, 2003-Ohio-4582, 2003 WL 22025969, ¶ 16; citing *Gallimore v. Children's Hosp. Med. Ctr.*, 1993-Ohio-205, 67 Ohio St. 3d 244, 250-251, 617 N.E.2d 1052, 1057.  It is not, as Grimsley implies, limited merely to the child's services to the parents.  Junior's parents are entitled to damages as a result of the emotional damage Junior suffered at Defendants' hands, as well.  For this reason, also, the motion to dismiss should be denied.

## CONCLUSION

For all the reasons discussed above, Plaintiffs urge the Court to deny the motion to dismiss filed by Defendant Joshua Grimsley, and to allow this case to proceed.

Respectfully submitted,

**EDWARD L. GILBERT CO., LPA**

/s/ Edward L. Gilbert
Edward L. Gilbert (0014544)
Attorney for Plaintiffs
One Cascade Plaza, Suite 825
Akron, Ohio 44308
Telephone (330) 376-8857
Fax (330) 376-8855
egilbert@edwardlgilbert.com

<u>**CERTIFICATE OF SERVICE**</u>

This will certify that the foregoing was filed electronically on February 22, 2022, using the

Court's electronic filing system, which will serve notice of the filing on all counsel of record by

electronic mail.

/s/ Edward L. Gilbert
Edward L. Gilbert
Attorney for Plaintiffs

14