IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT AKRON

| | | |
|---|---|---|
| K.W. (JUNIOR), ET AL. | : | CASE NO. 5:21-CV-2423 |
| | : | |
| PLAINTIFFS | : | JUDGE JOHN ADAMS |
| | : | |
| VS. | : | MAGISTRATE JUDGE |
| | : | CARMEN E. HENDERSON |
| CANTON CITY SCHOOL DISTRICT, | : | |
| ET AL. | : | |
| | : | |
| DEFENDANTS | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS
FILED BY THE SCHOOL DISTRICT DEFENDANTS**

Now come Plaintiffs, by and through the undersigned counsel, and offer the following Memorandum in Opposition to the Motion to Dismiss filed by the School District Defendants. Because Plaintiffs' causes of action are sufficiently pleaded in their Complaint to satisfy the requirements of the Federal Rules of Civil Procedure, Defendants' motion is without merit, and the motion should be denied.

**I.       Standard of Review.**

Defendants' motion is made pursuant to Fed.R.Civ.P. 12(b)(1) and (6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "A claim has facial

1

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In demanding that the Complaint assert particular actions by particular Defendants, Defendants are attempting to hold Plaintiffs to a probability standard, not a plausibility standard, as required by the Courts. "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**II.     Claims against a state actor in his official capacity are not redundant.**

Defendants argue that claims against them in their official capacity are "redundant" because, they argue, "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301 (1991); quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985). However, this distinction is important.

> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, e.g., *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, supra, 436 U.S., at 694, 98 S.Ct., at 2037); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).

In this case, Plaintiffs have asserted claims against the School District under *Monell*; against the individual Defendants personally; and against the individual Defendants in their official capacity. Both the *Monell* claims and the official capacity claims require Plaintiffs to demonstrate that a policy of the school district led to Plaintiffs' injuries. However, as the Sixth Circuit noted in *Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621, 635–36 (6th Cir. 2012), this is an issue

that is properly addressed at the summary judgment stage, once a plaintiff has had an opportunity to investigate whether such a policy exists. Thus, since no discovery has yet been done in this case, Defendants' arguments on this issue are premature, and Defendants' motion should be denied.

Defendants cite to several cases where official capacity claims were dismissed. However, the only case to consider the issue noted that the claims against the political subdivision must remain. Judge Lioi of this Court wrote, in *Y.S. v. Bd. of Educ. of Mathews Loc. Sch. Dist.*, 766 F. Supp. 2d 839, 842 (N.D. Ohio 2011), that "Whether or not [individual defendant] is part of the lawsuit, facts can be developed to establish his actions and the fact-finder can determine from those facts whether the Board of Education is liable for [individual defendant's] actions taken in his official capacity." Just so, if the Court decides to dismiss the individual defendants from this suit at this early stage, it should note that the Board of Education may still be held liable for their actions in the event that the necessary elements are proven.

### III. This Court has jurisdiction over all of Plaintiffs' claims.

This Court's jurisdiction over particular claims is granted by statute. In this case, jurisdiction over Plaintiff's claims made under 42 U.S.C. § 1983 is granted by 28 U.S.C. § 1331, which reads "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Because Plaintiff's claims arise under a federal statute, 42 U.S.C. § 1983, this Court has jurisdiction over them.

The first case cited by Defendants on this issue dealt with a very different issue than that in the case at bar. In *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008), the Court of Appeals determined that the Medicare Secondary-Payer Act did not operate as a "qui tam" statute, and for that reason determined that the plaintiff-appellant did not have standing to bring

3

the claims he had brought. The Court of Appeals determined that the district courts had correctly dismissed the claims based on that lack of standing.

The second case cited by Defendants, *Cartwright v. Garner*, 751 F.3d 752, 762 (6th Cir. 2014), was a suit wherein the plaintiff sued his sister and brother-in-law over a trust. The Court of Appeals determined that the district court properly dismissed the suit because jurisdiction belonged to the Tennessee Chancery Court.

In the third case cited by Defendants, *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 326 (6th Cir. 1990), the Court of Appeals upheld the dismissal of a taxpayer refund suit based on the failure to fulfill the prerequisites to such a suit.

None of these cases involve a parent pleading a § 1983 claim against a school or its employees. The Parent Plaintiffs' claims in this suit are based on their own damages, and are properly pleaded. For this reason, Defendants' arguments that the Parents' claims lack jurisdiction must be denied.

The first, second, and third causes of action in the Complaint assert claims on behalf of Junior, the immediate victim of Defendants' bigoted acts. The fourth cause of action asserts a claim on behalf of Senior and L.C., based upon their injuries in being forced to move their son to another school because of Defendants' actions. The fifth, sixth, and seventh causes of action again assert claims on behalf of Junior. The eighth cause of action asserts a claim for loss of consortium on behalf of Junior's parents. The fourth claim is based on violation of the Parents' rights, not Junior's. The eighth claim is based on the harm done to the Parents' relationship with their son. Parents have the standing to bring these claims. Indeed, they are the only people that have the standing to bring these claims. For this reason, Defendants' motion should be denied.

In the case cited by Defendants on this issue, *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012), the Court of Appeals considered whether a preacher had standing to challenge a policy at a state university requiring speakers to obtain advance permission before speaking in the public areas of the university. The requirements of 1) an injury, 2) traceable to the challenged action, and 3) the likelihood that the injury can be redressed by a favorable decision, were quoted from *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir.2004).

All three of these elements are present with regard to the Parents' claims. Their right to decide where their son attends school, as well as their relationship with their son, where interfered with because of the Defendants' actions. Those injuries are traceable to the Defendants' actions. A favorable decision will allow them to collect damages to compensate their injuries, thus redressing them. Thus, the Parents have standing to bring these claims.

**IV.     Plaintiffs sufficiently pleaded claims against the individual Defendants.**

Defendants argue that the claims against them in their individual capacity should be dismissed because, they claim, the Complaint contains no specific allegations of action on the part of any individual Defendant. Defendants are attempting to "raise the bar" on what is necessary to plead a cause of action against a group of people who acted together to commit a tort.

A similar issue was addressed by Judge Thomas Rose of the Southern District of Ohio:

> Count One, Branch Five asserts a claim for unconstitutional failure to intervene to protect Plaintiff Lucas. In order to establish liability for failing to intervene in the use of excessive force, it must be shown that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Turner v. Scott, 119 F.3d 425, 429 (6th Cir.1997). Plaintiffs allege that Defendant McKinney gave an order to throw Plaintiff Lucas to the ground. Defendants request that this claim be dismissed for failure to specify which defendants failed to intervene. Plaintiffs' proposed amended complaint refers to "all Defendants present." In the context of this case, this is sufficiently precise. Discovery will reveal which defendants were present. This portion of Defendants' motion will be denied.

5

*Burgess v. Fischer*, 766 F. Supp. 2d 845, 851 (S.D. Ohio 2010). Judge Rose was addressing a situation in which an arrestee was beaten during the booking process for making a rude comment to a Sheriff's Deputy, and several deputies, corrections officers, and other employees of the Sherriff's Office stood around and watched it happen. The allegations in Plaintiffs' Complaint are similar:

> 19. Defendants Marcus Wattley ("Wattley"), Frank McLeod ("McLeod"), Zachary Sweat ("Sweat"), Romeo Harris ("Harris"), Cade Brodie ("Brodie"), Tyler Thatcher ("Thatcher") and Josh Grimsley ("Grimsley"), together referred to as "Defendants' Employees", are all public decision-maker employees hired by the District/Board to teach, administer and implement policies, approved by the District/Board, in the Canton McKinley High School Football Program.
>
> \*\*\*
>
> 24. Defendants' Employees, led by Head Coach Wattley, established a mandatory off-season weight program that all perspective players were required to attend.
>
> \*\*\*
>
> 33. On Thursday, May 20th, 2021, as a result of a slight shoulder injury sustained while lifting weights, Junior decided not to appear for the mandatory weight class.
>
> 34. On Monday, May 24th, 2021, Junior appeared for the mandatory weight class and was suddenly approached by Coach Wattley and other Defendants' Employees and was told that he would be disciplined for missing the weight program on May 20th.
>
> 35. Junior was ordered to go to the gym and sit in the lone chair that was placed in the middle of the gymnasium floor.
>
> 36. Junior's teammates (approximately 30 students) were ordered by Defendants' Employees to carry 40-pound weights and walk around the perimeter of the gym, surrounding Junior.
>
> 37. Defendants' Employees gave Junior a large pork pepperoni pizza and ordered Junior to eat the entire pizza as punishment for failing to appear on May 20th, 2021.
>
> 38. Junior objected and reminded Defendants' Employees that he does not eat pork, due to his religious beliefs.
>
> 39. In fact, Junior kicked the pizza box away from him, refusing to touch the pork pepperoni pizza (this incident was caught by security footage).

    40. Defendants' Employees retrieved the pizza box and again ordered Junior to eat the pork pepperoni pizza, in violation of his religion.

    41. Junior stated a minimum of ten times that he did not eat pork or pork residue.

    42. At this point, Defendants' Employees then stated that Junior could remove the pork pepperoni slices; however, the residue was clearly still covering the pizza and Junior continued to object.

    43. Defendants' Employees ordered Junior to eat the balance of the pizza or stated that his tenure on the Canton McKinley Football Team would be in jeopardy.

    44. Meanwhile, Junior's teammates were forced by Defendants' Employees to circle the gym, perform strength exercises with the 40-pound weights and practice running/sprinting drills and were not allowed to stop until Junior finished the entire pizza.

    45. Junior was subject to threats from his teammates if he did not eat the pizza quickly (again, these facts can be verified by security footage).

    46. Junior, against his religious beliefs, was forced to eat the pork grease pizza.

    47. Immediately after, Junior was punished further by Defendants' Employees and was forced to run up and down the football field and practice "duck walks".

    48. According to Defendants' Employees' own statements, they had previously and routinely punished their football players by requiring them to eat miscellaneous products for breaking rules and regulations of the football team.

(Complaint, Doc. 6, PageID# 4-7) Just like in *Burgess*, Plaintiffs' Complaint refers to a specific group of Defendants, who are identified by name in an earlier paragraph, who acted together to complete a tort. As Judge Rose said, "[d]iscovery will reveal which defendants were present." The allegations above are sufficient to identify those persons who are alleged to have participated in 1. Forcing Junior to eat the pizza, 2. Forcing the other members of the team to perform exercise drills until Junior finished eating the pizza, and 3. Threatening Junior that he would be kicked off the football team if he didn't eat the pizza. This is sufficient to meet the "plausibility" test set out by the U.S. Supreme Court in *Iqbal* and *Twombley*.

    **V.**    **Both the School District and the Board of Education are named Defendants.**

The Canton City School District, which claims it is not sui generis, asks to be dismissed from this suit. The Complaint, in an abundance of caution, names both the District and the Board of Education for the District. (Doc. #1, PageID# 1) These are, for all intents and purposes of this case, the same entity. Thus, because Defendants admit that "under Ohio law, boards of education are capable of suing and being sued" it makes no real difference whether the School District is dismissed from this case. (Motion to Dismiss, Doc.# 10, PageID# 75), citing Ohio Revised Code § 3313.17. What Defendants are arguing is a distinction without a difference, and Plaintiffs will not waste the Court's time by opposing that argument.

## VI. Plaintiffs pleaded their § 1983 claims with sufficient specificity.

For this argument, Defendants argue that Plaintiff's causes of action are insufficient because they do not allege either an illegal policy, ratification, inadequate training, or a custom of tolerance. (Motion to Dismiss, Doc. 10, Page ID# 76) This amounts to an argument that § 1983 claims must be pleaded with specificity. This is not the law. *Jones v. Bock*, 549 U.S. 199, 212–13, 127 S. Ct. 910, 919, 166 L. Ed. 2d 798 (2007) (noting that no heightened pleading requirement exists for § 1983 cases.); citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The case that Defendants repeatedly rely on, *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014), states that:

> To properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."

Plaintiffs' Complaint alleges several of these.

> 16. Defendant Canton City School District and Defendant Canton City School District Board of Education ("District/Board"), through its Board Members, are

charged with the responsibility of establishing policies and procedures for students in the public school system of Stark County, Ohio

17. Further, as part of the District/Board's responsibility, it hires coaches, administrators and teachers to provide services to the public school system in Stark County, Ohio.

18. The District/Board and its employees are considered "public employees" operating "under the color of state law".

19. Defendants Marcus Wattley ("Wattley"), Frank McLeod ("McLeod"), Zachary Sweat ("Sweat"), Romeo Harris ("Harris"), Cade Brodie ("Brodie"), Tyler Thatcher ("Thatcher") and Josh Grimsley ("Grimsley"), together referred to as "Defendants' Employees", are all public decision-maker employees hired by the District/Board to teach, administer and implement policies, approved by the District/Board, in the Canton McKinley High School Football Program.

20. As such, the Defendants' Employees have the authority, through the District/Board, to discipline, supervise, control and order football players to perform certain acts within the football program.

* * *

24. Defendants' Employees, led by Head Coach Wattley, established a mandatory off-season weight program that all perspective players were required to attend. (FN 4 Such a mandatory program is a violation of Ohio High School Athletic Association ("OHSAA") rules.)

25. On information and belief, the District/Board was fully aware of the weight program and certain violations of the Canton McKinley Football Program; however, routinely ignored such violations.

* * *

30. During the period of time that he was a member of the Canton McKinley Football Team, Junior made it known, for team luncheons and dinners, that he could not eat pork and other arrangements would be made for non-pork options.

31. Plaintiffs further filed several forms with the District/Board noting Junior "does not eat pork".

32. Defendants' Employees were fully aware of Junior's religious dietary restrictions (nonconsumption of pork).

* * *

9

> 48. According to Defendants' Employees' own statements, they had previously and routinely punished their football players by requiring them to eat miscellaneous products for breaking rules and regulations of the football team.

(Complaint, Doc.# 1, Page ID# 4-6)

The allegation of an "illegal policy" appears in Paragraph 24, where the footnote notes that mandatory offseason workouts violate the rules of the Ohio High School Athletic Association. Paragraph 25 asserts that the Board and Administration were aware of this fact. Paragraph 25 also asserts that the Board and Administration had a custom of tolerance when it came to such rule violations. Paragraph 48 asserts that this was a regular practice.

With regard to the failure to train or supervise, Plaintiffs asserted a whole separate cause of action, which alleges:

> 80. Plaintiffs state the District/Board established policy, procedure and custom of allowing Defendants' Employees to punish student athletes by forcing Junior to eat product inconsistent with his dietary requirements and religious beliefs.
>
> 81. Said actionable harassment was foreseeable and deliberately indifferent to the rights of Junior.
>
> 82. The District/Board failed to properly train or teach Defendants' Employees respect dietary restrictions and religious beliefs.
>
> 83. As a result of failure to train, supervise and monitor Defendants' Employees, Junior suffered substantial permanent injury.

(Complaint, Doc.# 1, PageID # 11)

These paragraphs clearly assert that the Board had a policy of allowing the individual Defendants to punish student athletes in a manner that ignored the students' religious beliefs.

Unlike the plaintiffs in *M.T. v. Benton-Carrol-Salem Loc. Sch. Dist.*, No. 16-CV-2552, 2017 WL 2119346, at *2 (N.D. Ohio May 16, 2017), one of the cases cited by Defendants, Plaintiffs in this case pleaded a custom of inappropriate punishments (¶80), which the School Board allowed to be established (¶80), and regarding which the Board failed to properly train its

10

employees (¶ 82). These allegations not only establish that the Board was aware of the improper punishments, but that they did nothing to stop them, or to train their employees regarding them.

What Defendants are asking the Court to do is to require Plaintiffs to present evidence without giving them the chance to conduct discovery. Defendants are advocating for a heightened pleading standard that the Courts have repeatedly stated does not exist. *Jones v. Bock*, 549 U.S. 199, 212–13, (2007) (noting that no heightened pleading requirement exists for § 1983 cases.); citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, (1993). For this reason, Defendants' motion should be denied.

**VII. Defendants are not entitled to statutory immunity under Ohio Revised Code Chapter 2744.**

Defendants claim that they are immune from liability for Plaintiffs' claims made under Ohio law by operation of Ohio Revised Code Chapter 2744. However, R.C. § 2744.03(A)(6)(b) states that immunity is removed if "The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." The Complaint clearly alleges that Defendants were acting in bad faith and with a malicious purpose. Paragraph 59 asserts: "Plaintiffs state that the District/Board and Defendants' Employees acted in bad faith, with actual malice, recklessness, and with wanton, blatant disregard of Plaintiffs' rights thereby causing significant mental, physical and financial damages to Junior, Senior and L.C.." (Complaint, Doc.# 1, Page ID# 8) This assertion is sufficient to defeat any claim of statutory immunity at this stage of the case. For this reason, Defendants' motion should be denied.

**VIII. Plaintiff's cause of action for IIED is sufficient to state a claim.**

Defendants' argument that the Complaint fails to allege behavior sufficiently extreme to support a cause of action for Intentional Infliction of Emotional Distress is baseless. The case Defendants cite to asserted that the defendants "suspended [plaintiff], reassigned her to home and

11

to a position of lesser responsibility with an on-line high school, and prohibited her from contacting students, parents and District employees in order to clear her good name." *Mayle v. Brunswick City Sch. Dist. Bd. of Educ.*, No. 1:18CV475, 2019 WL 125694, at *2 (N.D. Ohio Jan. 8, 2019). Being removed from one's employment is not on the same level of harassment as being humiliated in front of your teammates, being made to publicly violate one of the tenets of your religion, and having your teammates punished unless you comply. The *Mayle* decision simply does not apply to the facts of this case.

> The Complaint alleges that
>
> 91. Plaintiff Junior was emotionally distraught as a result of the intentional actions alleged in this complaint and has been placed under medical supervision and counselling.
>
> 92. Plaintiff Junior will continue to need medical counseling in the future.

(Complaint, Doc.# 1, Page ID # 12) This is a far cry from simply being removed from employment.

> The elements of an Intentional Infliction of Emotional Distress claim in Ohio are: (1) defendant intended to cause emotional distress, or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's harm; and (4) plaintiff's emotional harm is so severe that no reasonable person would be expected to endure it.

*Mayle v. Brunswick City Sch. Dist. Bd. of Educ.*, No. 1:18CV475, 2019 WL 125694, at *2 (N.D. Ohio Jan. 8, 2019). The allegations of humiliation, harassment, and the resulting emotional and psychological injuries are sufficient to meet these elements. For this reason, this portion of Defendants' motion should also be denied.

Caselaw in Ohio holds that conduct that is sufficiently serious that the plaintiff requires medical intervention as a result is sufficiently serious to justify imposition of damages. As an

example, in *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App. 3d 82, 89, 721 N.E.2d 1068, 1072–73 (1999), the Ohio First District Court of Appeals held that a series of sexual remarks by a shop owner to a customer justified imposition of damages. Verbal and sexual harassment of a client by an attorney can also be sufficiently serious to support a claim for intentional infliction of emotional distress. *Buckman-Peirson v. Brannon*, 2004-Ohio-6074, ¶ 38, 159 Ohio App. 3d 12, 21, 822 N.E.2d 830, 837 (2d Dist.). Given the fragile nature of a teenager's emotional well-being, it is certainly plausible that religious discrimination and harassment from authority figures, combined with threats and harassment from peers, could have a serious negative effect on Junior's mental health. This was not an incident of common teasing, or even bullying. This was a premeditated, calculated effort by Defendants to embarrass and traumatize Junior. It worked. Junior has been under a doctor's care because of the emotional trauma. This is sufficient to plead a cause of action for intentional infliction of emotional distress under Ohio law.

### IX. Plaintiffs' claims for loss of consortium are pleaded sufficiently

Defendants' last argument is that Parents' claims for loss of consortium should fail because Junior did not suffer any physical injury. There are two problems with this argument. First, this argument is based on an outdated understanding of the nature of a loss of filial consortium claim in Ohio. Second, Junior did suffer a physical injury when he was forced to consume food which was tainted by materials that were—to him—inedible.

The nature of a claim for loss of filial consortium has been evolving in the last thirty years, since the Ohio Supreme Court's decision in *Gallimore v. Children's Hosp. Med. Ctr.*, 1993-Ohio-205, 67 Ohio St. 3d 244, 251, 617 N.E.2d 1052, 1057, where it held that "'Consortium' includes services, society, companionship, comfort, love and solace." See also *Brady v. Miller*, 2d Dist. Montgomery No. 19723, 2003-Ohio-4582, ¶ 16; *Rolf v. Tri State Motor Transit Co.*, 2001-Ohio-

13

44, 91 Ohio St. 3d 380, 381, 745 N.E.2d 424, 425. These decisions recognize that it is the damage to the parent and child relationship that constitutes the injury, not merely the loss of the child's services. The Complaint makes it clear that Junior has suffered severe emotional and psychological injuries as a result of Defendants' actions. (Complaint, Doc.# 1, Page ID # 12) These injuries, in turn, damaged his parents' relationships with him. It is that damage that the claim is intended to address. For this reason, the Parents' claims should be permitted to move forward.

Secondly, Junior did suffer a physical injury when he was forced to consume an inedible substance. Picking the pepperoni off of the pizza did not change the fact that the remaining pizza was contaminated by something akin to poison, as far as Junior was concerned. Defendants' argument is essentially claiming that forcing someone to eat poison is not a physical injury. They should not be able to wriggle out of responsibility for their actions merely because they did not leave any physical scars on Junior. They left plenty of psychological and emotional ones. For this reason, also, Defendants' motion should be denied.

## CONCLUSION

For all the reasons discussed above, Plaintiffs urge the Court to deny the motion to dismiss filed by Defendants, and to allow this case to proceed.

Respectfully submitted,

**EDWARD L. GILBERT CO., LPA**

/s/ Edward L. Gilbert
Edward L. Gilbert (0014544)
Attorney for Plaintiffs
One Cascade Plaza, Suite 825
Akron, Ohio 44308
Telephone (330) 376-8857
Fax (330) 376-8855
egilbert@edwardlgilbert.com

14

**CERTIFICATE OF SERVICE**

This will certify that the foregoing was filed electronically on March 22, 2022, using the Court's electronic filing system, which will serve notice of the filing on all counsel of record by electronic mail.

/s/ Edward L. Gilbert
Edward L. Gilbert
Attorney for Plaintiffs
